Accordingly, the judgment of the Customs Court is *affirmed*.

515 F. 2d 1145

THE UNITED STATES v. WEDEMANN & GODKNECHT, INC. a/c/ ATWATER THROWING CO. (No. 74–25, C.A.D. 1151)

United States Court of Customs and Patent Appeals, May 15, 1975

*Carla A. Hills*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Saul Davis* for the United States.

*Rode & Qualey*, attorneys of record, for appellee. *Ellsworth F. Qualey*, of counsel.

[Oral argument on January 8, 1975 by Saul Davis and Andrew P. Vance for appellant and by Ellsworth F. Qualey for appellee]

Before MARKEY, *Chief Judge*, RICH, BALDWIN, LANE and MILLER, *Associate Judges*

RICH, *Judge*.

This appeal is from the judgment of the United States Customs Court, Second Division,[1] sustaining protests to the classification of certain synthetic filaments manufactured in Germany by Farbenfabriken Bayer, A.G. (hereinafter FFB), and sold to domestic customers on a duty-paid delivered basis.

The merits of the classification issue were initially determined in *Wedemann & Godknecht, Inc., a/c Burlington Industries, Inc.* v. *United States*, 59 Cust. Ct. 475, C.D. 3199, 275 F. Supp. 1017 (1967). However, a question of the jurisdiction of the court to render a decision came up, based on an alleged lack of authority in the plaintiff, Wedemann & Godknecht, Inc., to file certain protests, and the court ordered further testimony to be taken on that question, the protests here involved being severed from some 40 others and restored to the calendar for that purpose.

The testimony of John W. Eisenhower, vice president of Allen Forwarding Company, Philadelphia customs brokers and foreign trade forwarders, was taken, following which the Customs Court, Second Division,[2] entered an order granting the Government's motion to dismiss the protests for lack of jurisdiction because they were not filed by a proper party plaintiff under section 514, Tariff Act of 1930, as amended, 19 USC 1514. A supporting memorandum[3] accompanied the order, *Wedemann & Godknecht, Inc.* v. *United States*, 65 Cust. Ct. 177, C.D. 4075 (1970).

---

[1] Judges Rao, Ford, and Newman, opinion by Judge Ford.
[2] The court then consisted of Judges Rao, Ford, and Rosenstein.
[3] By Judge Rosenstein.

Plaintiff then petitioned for rehearing and permission to take futher testimony regarding the authority of the plaintiff, Wedemann & Godknecht, Inc., to file protests. The motion was granted, and further testimony, together with answers to interrogatories, obtained pursuant to a commission to take depositions abroad, was introduced. The witnesses were officers of plaintiff and FFB. Thereafter, the Customs Court entered judgment sustaining the protests, from which this appeal was taken, after finding, for reasons stated in its opinion on rehearing 72 Cust. Ct. 14, C.D. 4499, 370 F. Supp. 1400 (1974), that the plaintiff was a person authorized to file the protests under section 514, thus reversing its previous decision on that question.[4]

The essential facts, relating to the statutory authority of Wedemann & Godknecht, Inc., to file protests, are succinctly and accurately stated in the Customs Court's last opinion (C.D. 4499) as follows:

> The record establishes the involved merchandise was sold by Farbenfabriken Bayer, A.G. of West Germany, hereinafter referred to as "FFB," to Atwater Throwing Co. and Liberty Fabrics of New York on a duty-paid delivered basis. Wedemann & Godknecht, Inc., customhouse broker for FFB, was authorized to make all customs entries for clearance and delivery at New York. It was also authorized to employ customhouse brokers at ports other than New York for entry, clearance and delivery. Allen Forwarding Co. was hired by Wedemann & Godknecht, Inc. for the purpose of entering and clearing the involved merchandise at the port of Philadelphia, Pennsylvania. All papers were forwarded by Wedemann & Godknecht, Inc. to Allen Forwarding Co. Entries in the involved cases were made in the name of Allen Forwarding Co., naming as the ultimate consignee either Atwater Throwing Co. or Liberty Fabrics of New York. However, no owner declaration or superseding bond was filed within the time prescribed by section 485(d), Tariff Act of 1930. The duties were paid by Allen Forwarding Co. for which it was reimbursed or payment was received in advance from Wedemann & Godknecht, Inc. These sums were in turn reimbursed by FFB. Upon liquidation of these entries, Allen Forwarding Co. notified Wedemann & Godknecht, Inc. who in turn advised the attorneys, Pursuant to an agreement with FFB, to file protests.
>
> Protests were filed in the name of Wedemann & Godknecht, Inc. for the account of Atwater Throwing Co. or Liberty Fabrics of New York.

Under section 514, quoted in full together with other possibly pertinent statutes in the opinion below, the party filing protests must be *"the importer, consignee, or agent of the person paying such charge or exaction* [here the duties]." (Emphasis ours.) The only question befoe us, as it was before the lower court on the rehearing (the classification issue having been previously settled in appellee's favor and being no longer contested), is whether the plaintiff, factually and legally, falls into one or another of those categories. We agree with the Customs Court that it does.

---

[4] There are 23 assignments of error (which seems an excessive number) which, as argued, all relate to the single question of appellee's right under section 514 to file the protests.

We agree with the lower court that Allen Forwarding Co. is the *consignee and sole owner* of the imported merchandise in the *tariff sense*. (In the *commercial* sense FFB appears to have been the actual owner of the goods when they were imported, to have employed Wedemann & Godknecht, Inc., as its broker to see that the goods were entered and the duties paid on its behalf, and to have reimbursed Allen Forwarding Co. for the duties it actually paid, but these facts do not enter into the legal theory on which we sustain the decision below.)

Allen Forwarding Co., located in Philadelphia, was employed by Wedemann & Godknecht, Inc., located in New York City, as its associate at the time of importation to enter the goods, pay the duty, and keep it informed as to the status of the customs procedures. The goods having been brought into the port of Philadelphia, they were entered by Allen Forwarding Co. who paid the duty and became the consignee by action of law and, in fact, the "person paying such charge" under section 514. However, as the consignee and sole owner in the tariff sense, it did not itself file the protests. Under section 514 the question still remains whether the protests were filed by the "agent of the person paying such charge," i.e., an agent of Allen Forwarding Co.

Wedemann & Godknecht, Inc., had a multiple role in the situation. First of all, it represented FFB as a customhouse broker with respect to its shipments to this country, as it had been doing continuously for 20 years. In that capacity, it employed Allen Forwarding Co. with respect to these "outport" Philadelphia importations. Allen Forwarding Co. advised it of the liquidations and Wedemann & Godknecht, Inc., having decided that the classification was wrong and the duty too high, filed protests in its own name, as the Customs Court said, and "for the account of" the domestic purchasers of the goods, Atwater Throwing Co. and Liberty Fabrics of New York. To be more realistic about it, Wedemann & Godknecht, Inc., did not file the protests, but instructed its then attorney, Eugene R. Pickrell, to do so. His name appears on the protests in the printed record as the actual signer and it must have been he who decided to name his client as the one filing the protests, for the account of whoever was the purchaser of the particular importation. This was, indeed, a "technical" error, as the lower court said, with respect to the importations into the port of Philadelphia handled by Allen Forwarding Co. for Wedemann & Godknecht, Inc.

In its first decision, in 1970, the Customs Court held that Wedemann & Godknecht, Inc., did not act as the agent of Allen Forwarding Co.

in filing the protests. In its second decision here on appeal it reversed itself and said:

This matter being tried under the tariff statutes of the United States, we must therefore consider Allen Forwarding Co. as the consignee and actual owner of the merchandise for customs purposes and therefore the *principal* in this transaction. [Emphasis ours.]

Under the general principles of agency, the acts of an agent are the acts of the principal. In the case at bar, the acts of filing the protests involved by Wedemann & Godknecht, Inc. are deemed to be the acts of Allen Forwarding Co. The record does establish that Allen Forwarding Co. has ratified the acts of Wedemann & Godknecht, Inc. in filing the protests.

While the lower court did not come right out and say so, it seems clear from the foregoing that in filing the protests it considered Wedemann & Godknecht, Inc., to have acted as the agent of Allen Forwarding Co., the person paying the duty, within the meaning of section 514. The record showing of the ratification is found in the testimony of Mr. Eisenhower. He was asked on direct examination by Mr. Qualey, attorney for plaintiff,

Q. Did you notify Wedemann and Godknecht of the liquidation of each of these entries?

A. Yes, sir.

Q. Did they ask you to be so notified?

A. They gave us indication that the entries would probably be protested.

Q. Were you aware that protest was to be filed?

A. Yes, sir.

Q. Protest in each of these cases was filed in the name of Wedemann and Godknecht, Inc.; do you now as a representative of Allen Forwarding Company, ratify and confirm such action?

A. Yes, I do.

Mr. QUALEY: Plaintiff rests.

In holding that plaintiff had the right to file the protests—i.e., that it was the proper party to do so—the Customs Court opinion concludes by saying:

That right should not be curtailed on a technicality when the consignee and its principals are in agreement as to the filing of a protest and the consignee has ratified the act of Wedemann & Godknecht, Inc. in filing the same. On the merits someone is entitled to a refund and that someone, as far as customs is concerned, is Allen Forwarding Co., the "person" paying the charge. In view of the record in this case, the Government in paying Allen Forwarding Co. will be protected from claims by anyone else.

The elaborately argumentative Government brief contains three main points: A. Appellee is not the "importer" within the meaning of section 514; B. Appellee is not the "consignee"; C. Appellee is not the "agent of the person paying such charge." We pass A and B without discussion because we join the Customs Court in disagreeing on point C, which suffices to support an affirmance.

■ Considering the Government's arguments on point C, we begin by noting the concession in its brief that an agent of the consignee has a right to file a protest. It also concedes "that Allen Forwarding Company was the 'principal,' i.e., the importer, consignee, and person paying the charge, in the subject transaction." The only question that remains is whether there was clear error in the lower court's conclusion that appellee, in filing the protest, *acted as* the agent of the con- signee. While there is no evidence of *specific appointment* of Wedemann & Godknecht, Inc., to act as agent of Allen Forwarding Co. in filing protests, it would have been a work of supererogation to have made such an appointment in view of the relationship of these customs brokers to each other and to the business of Farbenfabriken Bayer and its domestic customers. Those relationships were such as to reduce to an absurdity the strange statement in the Government's brief that "Wedemann & Godknecht, Inc. was a stranger to the entry transaction * * *." On the contrary, the facts demonstrate that Wedemann & Godknecht, Inc., was in the driver's seat throughout, selecting out-port brokers to represent it and its client, employing lawyers to file protests as necessary, and generally looking after the customs business of FFB. Allen Forwarding Co. did not have to appoint it to file protests as its agent because Wedemann & Godknecht, Inc., was making the decisions, and when it filed the protests on the Philadelphia importations it must have done so as the agent of "the person paying such charge." Although it did so without specific request or appointment, we think the "ratification" by Allen Forwarding Co. cleared up that question, both confirming the agency relationship *within the meaning of section 514* and adopting the action taken as its own.

■ We do not regard this as a technical question of agency law in the usual sense. Agency law as such is primarily concerned with contractual rights and liabilities, vicarious tort liabilities, etc.; what we are really concerned with here is customs law procedures, court pleadings, and the proper naming of parties in compliance with a procedural statute. The right at stake is the right to a judicial review, on which hangs the right to recover excess duty admittedly paid. ■ In *Wilmington Shipping Co.* v. *United States*, 52 CCPA 76, 79, C.A.D. 861 (1965), we expressed approval of the proposition stated in *Lewis' Sutherland on Statutory Construction*, Sec. 717, that statutes giving the right of appeal are to be liberally construed in furtherance of justice. In *Eaton Mfg. Co.* v. *United States*, 60 CCPA 23, C.A.D. 1076, 469 F.2d 1098 (1972), in which the sufficiency of a protest filed pursuant to section 514 was involved, we said, 60 CCPA at 30, that "denial of jurisdiction for insufficiency of protest is a severe action which should be taken only sparingly" and construed the protest liberally. In spite of some uncertainty, we held it sufficient because it did not "impose

any undue burden on the collector." In *Wells Fargo & Co.* v. *United States*, 7 Ct. Cust. Appls. 346, T.D. 36903 (1916), the predecessor of this court took a liberal view of the establishment of an agency relationship in the matter of filing a protest by Wells Fargo as a customhouse broker for an owner. The court said (p. 351–52) :

This is not a case which involves the binding force and effect of a contract made by an agent, but rather is a question of practice or procedure under a statute providing how an action may be instituted.

In light of these principles and precedents and on the particular facts of this case we find no error in the decision below. The record makes it clear that the Government was aware at all times that any refunds of excess duty paid were to go to Allen Forwarding Co., and thus did not suffer additional administrative burden from the manner in which these protests were filed.

We do not mean by this opinion to condone slipshod performance by the customs bar in complying with the tariff statutes. If, as the Government would have us believe, filing of protests in the name of the wrong party is becoming a problem, we hope that the excessive litigation which has resulted from what was done in this case will be taken as a lesson. But we think the penalty should fit the crime and that FFB should not have to foot the bill for improving professionalism in the customs bar and among brokers.

The judgment of the Customs Court is *affirmed*.

---

MILLER, *Judge, concurring.*

I concur in the majority's decision, but I am persuaded that the decision is needlessly premised on a fiction. Allen Forwarding Co. (Allen) clearly was the agent for Wedemann & Godknecht (Wedemann). However, the majority reverses the positions and makes Allen the principal. As did the Customs Court, it also recognizes an after-the-fact "ratification" of Wedemann's protest action by Allen.

Under section 514 of the Tariff Act of 1930 (19 USC 1514), a protest may be filed by "the importer, consignee, or agent of the person paying such charge or exaction." Appellant contends that "agent of the person paying such charge or exaction" means agent of the importer or agent of the consignee, and that to decide otherwise would be contrary to the "Congressional scheme." Notwithstanding that section 505 of the Tariff Act of 1930 (19 USC 1505) requires the consignee to pay the duty at the time of entry, Congress did not use the phrase "or agent of the consignee" and, instead, used the phrase "agent of the person paying such charge or exaction," which would indicate a broader sweep in the "Congressional scheme."

Indeed, a strict interpretation of the language results in the anomaly of prohibiting the person paying the charge from filing a protest, while authorizing his agent to do so. A long time ago, the Second Circuit declined to indulge in such a strict interpretation, saying that "agent of the person paying such charge * * * includes the principal for otherwise substance would be subordinated to mere language." *Patchogue-Plymouth Mills Corp.* v. *Dunning*, 101 F. 2d 41, 43 (2d Cir. 1939). Using this approach, Wedemann, as principal of Allen, which technically paid the charge, would be entitled to file the protest. This is essentially the approach followed by the majority, which properly takes the position that statutes giving the right of appeal are to be liberally construed in furtherance of justice.

The legislative history of the anomaly in the statutory language provides no guidance, thus laying the foundation for liberally construing the statute in furtherance of justice, particularly when there would be no burden on the Customs Service. The present language was first enacted as section 514 of the Tariff Act of 1922 (Pub. L. No. 318, ch. 356, 42 Stat. 969) upon recommendation by the United States Tariff Commission.[1] H.R. Rep. No. 248, pt. 1, 67th Cong., 1st Sess. 20 (1921). The Commission had *originally* recommended a complete revision and codification of the customs administrative laws during the Sixty-fifth Congress, but no action was taken. (Subsequently, Congress requested the Tariff Commission to resubmit its recommendations, and these were enacted.) The *original* recommendations included a proposal to authorize protests by "the importer, consignee, or agent *or* the person paying such charge, or exaction." United States Tariff Comm'n, *Report Upon the Revision of the Customs Administrative Laws* 133 (1918) (emphasis added). This proposal was merely for the purpose of simplifying rather than substantively changing the existing law. *Id.* at 13, 203, 208. As can be seen, it would have eliminated the obscure phrase "agent of such merchandise" by replacing it with "agent." However, the proposed language in the *subsequent recommendations* changed "or" (emphasized in the quotation above) to "of." United States Tariff Comm'n, 67th Cong., 1st Sess., *Proposed Revision of the Customs Administrative Laws* 42 (Comm. Print 1921). There was no explanation for this change, and the anomaly dealt with by the Second Circuit has remained in every subsequent revision of the customs administrative laws.

The courts have consistently permitted the owner-importer of the merchandise or his agent to protest the decision of the collector, even

---

[1] Previous statutes permitted protests by "the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions." Tariff Act of 1913, § III, para. N, Pub. L. No. 16, ch. 16, 38 Stat. 187; Customs Administrative Act of 1890, § 14, ch. 407, 26 Stat. 137, as amended by the Tariff Act of 1909, § 14, Pub. L. No. 5, ch. 6, 36 Stat. 100.

though such owner-importer or agent (or both) was not so identified in the entry papers, upon proof of identity at the trial. See *United States* v. *Hannevig*, 10 Ct. Cust. App. 124, T.D. 38384 (1920) ; *Adolco Trading Co.* v. *United States*, 71 Cust. Ct. 145, C.D. 4487 (1973) ; *Great Lakes Foundry Sand Co.* v. *United States*, 15 Cust. Ct. 256, Abs. 50442 (1945) ; *Bernstein* v. *United States*, 59 Treas. Dec. 870, T.D. 44800 (Cust. Ct. 1931) ; *Davies, Turner & Co.* v. *United States*, 58 Treas. Dec. 1216, Abs. 14407 (Cust. Ct. 1930) ; *Gray* v. *Lawrence*, 10 F. Cas. 1031 (No. 5,722) (C.C.S.D.N.Y. 1853). The import of these decisions is that, for purposes of section 514, a protest may be filed by one who proves that he is the real party in interest or his agent. Thus, in *Bernstein*, supra, the concurring opinion quoted the following portion of Chief Justice Taney's opinion in *Mason* v. *Kane*, 16 F. Cas. 1044 (No. 9,241) (C.C.D. Md. 1851) :

> We see no inconvenience that can arise to the collector, or the public, by permitting the owner to maintain the suit in his own name, instead of suing in the name of his agent or consignee; the payment by the consignee, is the payment by the principal; and the protest of the consignee, the protest of the principal, if he thinks proper to adopt it. We think the practice in some of the circuits has sanctioned suits by the foreign owner, in cases of this description; and as this practice is consistent with a fair construction of the act of 1845, and no injustice or inconvenience can arise from it, the court are of opinion, that this objection must be overruled.

The majority recognizes that Farbenfabriken Bayer, A.G. (FFB) was the real party in interest and that Wedemann was its agent in the United States. Construing the statute liberally and looking at the substance of the transactions, particularly in view of the "duty-paid delivered" contract, I would consider "the person paying such charge" to include FFB and hold that its agent, Wedemann, is entitled to file the protest and conduct the litigation. Cf. *S. Stern & Co.* v. *United States*, 51 CCPA 15, C.A.D. 830, 331 F.2d 310 (1963).

I agree with the majority that naming Atwater and Liberty Fabrics in the protest was a "technical error"; further that the protest did not thereby impose an undue burden on the Customs Service. Also, as the majority says, the government was aware at all times that any refunds of excess duty paid were to go to Allen.[2] As Wedemann's agent, Allen would repay Wedemann, which in turn would repay its principal, FFB. Again as the majority says, the government would not suffer additional administrative burden.

---

[2] In *Silverstein Bros.* v. *United States*, 58 Treas. Dec. 667, 672, T.D. 44394 (Cust. Ct. 1930) the court held the protest sufficient stating :

> If the officer of the Government, the collector, understands the nature of the claim made, and by whom, we think it is sufficient. * * * [T]he officer of the Government who makes refund of duties improperly collected, can not be deceived in that regard because he knows who paid the duties.

This is not to say that the law of agency must be followed whenever customs procedures are involved. However, when the two can be harmonized in accordance with the real world of commerce and with no burden to the government, I think it should be done.