**PASCO TERMINALS, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 77-8.**

United States Court of Customs and Patent Appeals.

Dec. 15, 1977.

J. Alan Galbraith, Washington, D. C., attorney of record, for appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, Velta A. Melnbrencis, New York City, for the U. S.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal from a Customs Court order issued by Judge Maletz, 76 Cust.Ct. 204, C.D. 4658, 416 F.Supp. 1242 (1976), dismissing the case because of appellant's failure to establish standing in accordance with § 514 of the Tariff Act of 1930 as amended.[1] A claim was filed by appellant to recover duties it paid pursuant to the Antidumping Act of 1921.[2] Appellee filed a motion to dismiss the action for failure of appellant to establish standing. The Customs Court found that appellant was not an importer, consignee, or agent as required by § 514.

The claim, as originally filed with the Customs Court, is based on payment by appellant of dumping duties which were

---

1. 19 U.S.C. § 1514. Section 1514(b)(1) provides in part:

[P]rotests may be filed by the importer, consignee, or any authorized agent of the person paying any charge or exaction, or filing any claim for drawback, or seeking entry or delivery, with respect to merchandise which is the subject of a decision in subsection (a) of this section.

Section 514 of the Tariff Act of 1930 as amended is incorporated by reference in 28 U.S.C. § 1582(c) which involves jurisdiction.

2. 19 U.S.C. § 160, *et seq.*

assessed[3] on four entries of crude sulphur. The merchandise was imported into the United States from Mexico pursuant to a sales contract involving a Mexican company, Azufrera Panamericana, S. A. (Azufrera), E. I. duPont de Nemours and Company (DuPont), and Caribbean Sulphur Shipping Company, Ltd. (Caribbean), wholly-owned by Azufrera. The sales contract was entered February 17, 1970. By its terms, title and risk passed to DuPont at Coatzacoalcos, Veracruz, Mexico. Import licenses and duties were also the responsibility of DuPont.

The sales contract was in effect when the Department of the Treasury and the Tariff Commission[4] conducted an investigation into the possibility of dumping and injury to a United States competitor in the sulphur industry. On November 6, 1971, a Notice for Withholding of Appraisement was published. After that date, two shipments of crude sulphur were purchased by DuPont, one on November 9, 1971, and one on December 6, 1971. Both shipments passed through Wilmington, Delaware, and Philadelphia, Pennsylvania, thereby necessitating the filing of four Consumption Entries (a Bureau of Customs form). The invoices indicate that a part of each shipment was delivered to Thompson's Point, New Jersey, and the balance of each shipment was delivered to Deepwater Point, New Jersey. The dates of exportation recorded on the Consumption Entries fall on or between October 13, 1971, and November 30, 1971. Dumping duties were assessed on these entries of crude sulphur which, under the Tariff Schedules of the United States (TSUS),[5] enter duty free. The dumping duties were ultimately paid by appellant in accordance with an amendatory letter dated December 3, 1971 from Azufrera to DuPont. The letter confirmed an "agreement," which was effective November 8, 1971, to substitute appellant for Azufrera as vendor under the sales contract and stated that appellant would comply with the requirements imposed by the Bureau of Customs. The implication of this arrangement was that appellant acquired status as "consignee" or "agent" within the meaning of § 514.[6] Appellant was thought to be responsible for the dumping duties and paid them.

Appellant, by way of an amendment to its original complaint, alleged that it was consignee of the merchandise and not, as formerly alleged, importer. The issue before the Customs Court was whether the plaintiff-appellant was "consignee" or "agent of the person paying any charge." We review the finding by the Customs Court that appellant did not meet any of the statutory requirements for standing under § 514.

The document heavily relied upon by appellant is the letter dated December 3, 1971, from Azufrera to DuPont. Appellant argues that this letter confirmed an earlier "agreement" of November 8, 1971, to modify the sales contract involving Azufrera and DuPont. The thrust of appellant's argument is that the amendatory letter substituted appellant for the vendor, Azufrera. The implication is that appellant, thereby,

---

**3.** Statutory authority to impose dumping duties is 19 U.S.C. § 161(a).

§ 161. *Amount of duty to be collected; determination of foreign market value of goods*

(a) In the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary of the Treasury has made public a finding as provided for in section 160 of this title, entered, or withdrawn from warehouse, for consumption, not more than one hundred and twenty days before the question of dumping was raised by or presented to the Secretary or any person to whom authority under said section has been delegated, and as to which no appraisement has been made before such finding has been so made public, if the purchase price or the exporter's sales price is less than the foreign market value (or, in the absence of such value, then the constructed value) there shall be levied, collected, and paid, in addition to any other duties imposed thereon by law, a special dumping duty in an amount equal to such difference.

**4.** The Tariff Commission is now known as the United States International Trade Commission.

**5.** TSUS, Item 415.45.

**6.** See note 1.

became responsible for the dumping duties. Appellant is a wholly-owned subsidiary of Azufrera. By virtue of its location in the United States and ability to do business within the United States, appellant allegedly became importer of the crude sulphur shipments in question. The Customs Court, however, did not give the letter this intended effect. The court stated that the letter by itself was insufficient to establish the amendment and that the letter was the only evidence of the amendment.

## OPINION

In its decision, the Customs Court considered, inter alia, whether appellant was an "agent of the person paying any charge." We agree with the lower court's conclusion that appellant was not an agent within the *literal* meaning of the pertinent statute. However, there is precedent in case law for giving a liberal construction to § 514. *United States v. Wedemann & Godknecht, Inc.*, 515 F.2d 1145, 62 CCPA 86, C.A.D. 1151 (1975) (hereinafter cited as *Wedemann*), involved the issue of standing under § 514. Wedemann filed protests in the Customs Court to recover charges which were paid by consignee, Allen Forwarding Company. The specific issue was whether Wedemann was "agent of the person paying any charge." The relationship between Wedemann and the consignee was as follows:

> Wedemann & Godknecht, Inc., had a multiple role in the situation. First of all, it represented FFB [vendor] as a customhouse broker with respect to its shipments to this country, as it had been doing continuously for 20 years. In that capacity, it employed Allen Forwarding Co. with respect to these "outport" Philadelphia importations. Allen Forwarding Co. advised it of the liquidations and Wedemann & Godknecht, Inc., having decided that the classification was wrong and the duty too high, filed protests in its own name, as the Customs Court said, and "for the account of" the domestic purchasers of the goods * * *. [515 F.2d at 1147, 62 CCPA at 89.]

We concluded that Wedemann had standing, as an agent, based on the following analysis:

> Considering the Government's arguments * * * we begin by noting the concession in its brief that an agent of the consignee has a right to file a protest. It also concedes "that Allen Forwarding Company was the 'principal,' *i. e.*, the importer, consignee, and person paying the charge, in the subject transaction." The only question that remains is whether there was clear error in the lower court's conclusion that appellee, in filing the protest, *acted as* the agent of the consignee. While there is no evidence of *specific appointment* of Wedemann & Godknecht, Inc., to act as agent of Allen Forwarding Co. in filing protests * *. [T]he facts demonstrate that Wedemann & Godknecht, Inc., was in the driver's seat throughout, selecting out-port brokers to represent it and its client, employing lawyers to file protests as necessary, and generally looking after the customs business of FFB. Allen Forwarding Co. did not have to appoint it to file protests as its agent because Wedemann & Godknecht, Inc., was making the decisions, and when it filed the protests on the Philadelphia importations it must have done so as the agent of "the person paying such charge." Although it did so without specific request or appointment, we think the "ratification" by Allen Forwarding Co. cleared up that question, both confirming the agency relationship *within the meaning of section 514* and adopting the action taken as its own. [515 F.2d at 1148–49, 62 CCPA at 91.]

The case at hand presents a fact pattern not contemplated by the statute. Appellant was operating as an agent when it paid the dumping duties which flowed from the execution of the sales contract. Although appellant was not party to the original sales contract, appellant was involved in the sales transaction which resulted. The amendatory letter between Azufrera and DuPont is testimony to their plan to include appellant in the sales transaction. Appellant ratified the amendatory letter by the act of paying

the dumping duties. By this ratification, appellant became agent for the contracting parties. The agency relationship was created to shift the responsibility of paying the dumping duties from DuPont, as importer, to appellant. However, the agency relationship established by the amendatory letter benefited both the contracting parties.[7] In furtherance of Azufrera's interests, the integrity of the sales contract was maintained and in service of this end, appellant paid the dumping duties. This agency relationship was created between the contacting parties and appellant for the exigencies of the sales contract. The statute, § 514, provides standing for "agent of the person paying any charge." We find support in *Wedemann* for giving § 514 a liberal construction. Underlying our decision in that case was the belief that denial of standing to a litigant is a severe action which should be taken "only sparingly." Appellant, in the present case, paid the dumping duties as agent for the contracting parties. Under the contract terms, DuPont was responsible for the dumping duties. We find it incongruous, under the facts of this case, that an agent has standing to claim the duties another paid but that the agent, who pays the duties for another, does not have standing. We conclude that appellant is within the purview of § 514 as an "agent of the person paying any charge." Because appellant is within one of the categories set out in § 514, it is unnecessary to consider the remaining arguments briefed by the parties. In view of the above discussion, we *reverse* the order of the Customs Court.

MILLER, Judge, concurring, with whom LANE, Judge, joins.

The majority correctly states that "[a]ppellant . . . paid the dumping duties," but then, with the wizardry of a Houdini, escapes from this reality to discover appellant's "standing" under section 514 by concluding that appellant is an "agent of the person paying any [such] charge." The majority opinion in *United States v. Wedemann & Godknecht, Inc.,* 515 F.2d 1145, 62 CCPA 86, C.A.D. 1151 (1975), from which the majority here quotes extensively, provides no basis for such a conclusion. In *Wedemann,* the majority found that Wedemann & Godknecht was the *agent* of the person paying the duty and, therefore, had standing under section 514.

The majority opinion does not follow the holding in *Wedemann,* but, instead, adopts the analysis of my concurring opinion in that case. What the majority implicitly concludes should be explicitly stated, namely: Pasco has proved that it is the real party in interest, and this court has concluded that *the class of persons entitled to file protests under section 514 must include the person who pays the duty.*

---

7. As we noted, supra, Caribbean is also a party to the sales contract. We do not, however, include Caribbean in our discussion of the amendatory letter.