**SOUTH AFRICAN MARINE CORPORATION, LTD.,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

Court No. 84–12–01757.

United States Court of International Trade.

June 6, 1986.

O'Connor & Hannan, Myles J. Ambrose and F. Gordon Lee, Washington, D.C., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Saul Davis, Civ. Div., U.S. Dept. of Justice, New York City, for defendant.

## Opinion and Order

RESTANI, Judge:

Plaintiff, South African Marine Corporation, Ltd. (SAM), a South African corporation engaged in the business of owning and operating ocean-going vessels, seeks to challenge the imposition of import fees on raw sugar it transported from Swaziland to the United States. Defendant moves to dismiss the claim for lack of jurisdiction. Defendant claims that plaintiff does not possess the statutory right to seek judicial review of the relevant administrative action.

The facts of this case are not in dispute. SAM entered into a contract with Swazi Sugar Corporation (Swazi), the exporter of record, to transport the subject sugar to the United States. Under the terms of the agreement, plaintiff guaranteed the arrival of the merchandise at the first sugar port in the United States before September 30, 1981.

Swazi then entered into a contract of sale for the full amount of the sugar with Czarnikow, Ltd. Czarnikow, Ltd., sold some of the sugar to Czarnikow, Inc., which sold the sugar to Philipp Bros., which sold the sugar to Imperial Sugar Co. (Imperial), the importer of record. Czarnikow, Ltd., sold the remainder of the sugar to Christman Trading Corp., which sold the sugar to Refined Syrups, which sold the sugar to Farr Man Co. Farr Man Co. sold some of the sugar to Imperial and the remainder to Coca Cola Co. Coca Cola sold that sugar to Imperial. All of the contracts involved provided that the sugar be sold on a duty-paid basis; consequently, each purchaser could deduct from the contract price any import fee imposed.[1] In this fashion, any import fee imposed on Imperial was to be passed up the chain of sale to Swazi.

Plaintiff's vessel containing the sugar arrived at the first United States port on October 1, 1981. A quarterly adjusted import fee became effective on the same date.[2] Consequently, the United States Customs Service (Customs) assessed an import fee against Imperial. Imperial paid the total import fee to Customs on October 1, 1981. On April 2, 1982, the entry was liquidated by Customs, resulting in a slight adjustment in the fee.[3] This adjusted fee

1. The Farr Man-Imperial contract does not contain a duty-paid clause. The parties agree, and close examination of the invoices involved demonstrates, however, that Farr Man and Imperial performed their obligations under the contract as if it contained a duty-paid clause.

2. The import fee on raw sugar is charged at a fluctuating rate and is imposed in lieu of ordinary customs duties. Section 22 of the Agricultural Adjustment Act, as amended, authorizes the President of the United States to impose such fees by proclamation. 7 U.S.C. § 624

(1982). On December 28, 1978, President Jimmy Carter issued a proclamation providing for a quarterly adjusted fee on sugar. Proclamation No. 4631, 44 Fed.Reg. 1 (1978). See Section 22 Import Fees: Determination of Quarterly Import Fees on Sugar, 46 Fed.Reg. 48,274 (1981) for the calculation of the fees at issue in this case.

3. The initial total import fee assessed was $540,-136.80, based on a fee of 1.531 cents per pound on 35,280,000 pounds of sugar. The liquidation fee was $539,908.83, based on a discharge of

was deducted from the contract price up the line of sellers to Swazi. In turn, pursuant to the contract between Swazi and SAM, SAM ultimately paid Swazi an amount based on the fee as damages for breach of contract.[4]

Plaintiff, Imperial, and Swazi jointly filed a protest challenging the imposition of the fee on June 29, 1982. Customs denied the protest on June 20, 1984. Plaintiff, independent of the other parties, brings this suit challenging the propriety of the imposition of the fee.[5]

Defendant claims that plaintiff does not fall within the statutory classes of parties who may protest an administrative decision and, subsequently, may contest denial of such a protest. Plaintiff counters that the government's failure to object to the propriety of the protest by SAM, at the time the protest was filed, prohibits it from now objecting on that basis to the filing of this action. Plaintiff contends that Customs was obligated to raise this issue when it considered and denied the protest. In addition, plaintiff contends that raising the issue at this stage in the proceedings is unduly prejudicial, presumably because the statute of limitations has run.

### Waiver

For plaintiff to bring a suit challenging the imposition of duties or fees, the suit must contest the denial of a valid protest filed by plaintiff. 28 U.S.C. §§ 1581(a), 2631(a) (1982). In *Shigoto International Corp. v. United States*, 66 Cust.Ct. 252,

C.D. 4199 (1971), this court found, in a similar context, that the plaintiff lacked standing to protest a Customs decision because plaintiff was not among the parties listed in the statute as eligible to protest. *Id.* at 253. The court further found that the fact that the protest was denied on the merits did not affect this result because the Government's agent could not waive the statutory standing requirement for protest (and, consequently, suit), which it deemed jurisdictional.[6] *Id.*

This court has used the term "standing" to characterize this statutory issue in other cases as well. *See, e.g., Mohawk Recreation Products, Inc. v. United States*, 77 Cust.Ct. 180, 423 F.Supp. 932 (1976). Standing, however, is normally thought of as a judicially, rather than a statutorily, created precept. The standing requirement involves both considerations under the case and controversy provision of Article III of the Constitution and prudential questions as to whether plaintiff's interests fall within the zone of interests regulated or benefited by the statute or regulation being applied. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–76, 102 S.Ct. 752, 757–60, 70 L.Ed.2d 700 (1982) (defines and distinguishes constitutional and prudential tests of standing); *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 790 & n. 4 (Fed.Cir.1984) (same). When the proper party plaintiffs are defined in specific terms by statute, characterizing disputes over who may sue as "standing" problems may lead to confu-

---

35,265,110 pounds of sugar. As a result, Customs issued a refund check of $227.97 following liquidation.

**4.** Plaintiff actually compensated Swazi in the amount of $526,411.10, or 97.5% of the fee. As a result of an arbitration proceeding, Swazi accepted this sum from plaintiff in satisfaction of its prior contractual arrangement.

**5.** Swazi was a plaintiff in this action when the summons was filed. SAM subsequently moved for amendment of the summons, striking Swazi

as a plaintiff. Defendant noted no objection and the motion was granted.

**6.** "Subject-matter jurisdiction ... is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). Due to these characteristics, principles of estoppel do not apply. *Id.* at 702, 102 S.Ct. at 2104 (citing *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951)).

sion.[7] However one characterizes the problem here, it remains one involving the *statutory* limits on who may sue and, consequently, what suits may be heard by the court. *Shigoto* clearly supports the principle that such statutory proscriptions may not be waived by acts of omission of government agents, such as failure to reject a protest.

### Statutory Eligibility to Sue

The administrative protest, which is a prerequisite for suit under 28 U.S.C. § 1581(a), may challenge only certain actions by Customs, 19 U.S.C. § 1514(a) (1982 & Supp. II 1984), and may be filed only by certain classes of people. *Id.* § 1514(c)(1). The parties agree that the transaction at issue falls within one of two categorized subjects of protest: 1) the classification and rate and amount of duties chargeable, or 2) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury. *Id.* § 1514(a)(2) & (3). The parties disagree, however, as to whether plaintiff fits within any of the specified classes of persons who may file a protest. The parties do agree that the relevant classes of protestants are the importers or consignees shown on the entry papers, their sureties, any person paying any charge or exaction, or any authorized agent of any of the above persons. *Id.* § 1514(c)(1)(A), (B), & (E). Defendant contends that plaintiff is not within any of the specified classes. Plaintiff contends that it is a "person *paying* any charge or exaction." [8] *Id.* § 1514(c)(1)(B) (emphasis added). Therefore, at the outset, the court will determine whether or not plaintiff *paid* the

fee within the meaning of the statute. If plaintiff did not *pay*, the court need not decide whether the fee is a charge or exaction or is a duty which is not a charge or exaction.[9]

The statute at issue, 19 U.S.C. § 1514(c) (1982), if described generally, permits persons who have a close relationship to an import transaction to protest, and thus, to sue. Therefore, it is important to determine exactly the nature of plaintiff's relationship to the transaction which is the subject of the challenged determination.

■ Plaintiff here was a carrier. It was not a seller in a chain of sales on a duty-paid basis and it was not directly involved in the entry or import process. Plaintiff paid an amount equivalent to 97.5% of the amount of the fee to a seller in the chain of sale, in satisfaction of a claim for late delivery of the goods; it did not pay anything directly to Customs. Certainly, plaintiff's status as a carrier did not render it legally or contractually obligated to pay the fee; it was only when its own conduct contributed to the imposition of the new fee on the goods that plaintiff's potential interest in the fee issue arose. Plaintiff's closest connection to the customs transaction is that it became obligated to pay an amount almost equivalent to the amount of the fee paid, as consequential damages for a breach of a contract term.

This court has stated that to contest the denial of a protest and to obtain a refund of customs duties, a party must have "some direct connection to the customs transaction at issue." *Parksmith Corp. v. United States*, 77 Cust.Ct. 102, 103, 428

---

**7.** Closely related and often confused with standing are the concepts of "capacity" and "real party in interest." *See* 6 Wright and Miller, *Federal Practice and Procedure* Civil § 1542 at 639 (1971).

**8.** Plaintiff does not claim to be an importer, a consignee, a surety, an agent, or a subrogee of any of these persons.

**9.** There is support for the proposition that the term "charge or exaction" excludes "ordinary duties," *see, e.g., Alberta Gas Chemicals v. Blumenthal,* 82 Cust.Ct. 77, 81–82, 467 F.Supp. 1245, 1249–50 (1979), but the cases which make

the distinction arise in other contexts and do not discuss 19 U.S.C. § 1514(c), or its predecessors. Furthermore, in *United States v. Wedemann & Godknecht, Inc.,* 62 CCPA 86, 88, 515 F.2d 1145, 1147 (1975), the Court of Customs and Patent Appeals clearly assumed that for purposes of determining *who* could protest, the words "charges or exactions" included "duties." 19 U.S.C. § 1514 was amended in both 1970 and 1979. The legislative history of the amendments is not particularly illuminating as to whether *Wedemann* remains valid on this point.

F.Supp. 1094, 1095 (1976). Although one might argue that *Parksmith* is distinguishable from the case at hand in that it dealt with a voluntary purchaser of a chose-in-action of the entity entitled to protest, it is nonetheless instructive. *Parksmith* addressed the issue of the applicability of the Anti-Assignment Act, 31 U.S.C. § 203.[10] One purpose of the Anti-Assignment Act is to prevent a multiplicity of parties with whom the government must deal and to enable the government to know with whom it is dealing until the transaction is closed. *Hobbs v. McLean,* 117 U.S. 567, 576, 6 S.Ct. 870, 874, 29 L.Ed. 940 (1886); *Patterson v. United States,* 173 Ct.Cl. 819, 354 F.2d 327, 329 (1965). Section 1514(c) similarly operates to limit the number of parties who may bring suit, and presumably it has some of the same purposes as the Anti-Assignment Act. Conceivably, without the limitations of section 1514(c), the government might have been faced with protests from six or seven parties in this case. (Indeed, three parties protested.) Obviously, this could create administrative problems, as well as the problems associated with multiple-party litigation or successive suits.

Plaintiff argues that it is the only party interested in pursuing this challenge to the imposition of the import fee and that it must be allowed to proceed in the interest of justice, that is, that it is the only real party in interest. It seems all other parties in this chain of sale have been compensated, at least to 97.5% of the duties paid. Whether or not other parties remain interested, however, is not determinative. If the obligation of other parties to pursue this claim is not contractually implied, plaintiff arguably could have expressly contracted for the seller it dealt with to require the importer, through contracts with others in the chain of sale, to pursue any reasonable objections to fees imposed. Alternatively, plaintiff might have con-

tracted as part of its latest agreement with Swazi for Swazi to do whatever it could to pursue the claim. Even if the court believed that these options were unavailable and that as a matter of fairness plaintiff should be able to pursue its claim, the court cannot rewrite the statute.

Plaintiff cites *Pasco Terminals Inc. v. United States,* 65 CCPA 28, 567 F.2d 976 (1977), and *United States v. Wedemann & Godknecht, Inc.,* 62 CCPA 86, 515 F.2d 1145 (1975), for the proposition that section 1514 should be liberally construed and that a real party in interest may protest and bring suit. First, plaintiff misapprehends the meaning of real party in interest. Because plaintiff is in the position similar to that of an assignee of a claim, and would appear to be the entity possibly benefiting from the suit, at first glance it would seem to fit into the real party in interest category. *See infra* discussion of CIT Rule 17(a). The real party in interest, however, is the entity which under substantive law has the right sought to be enforced. 3A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 17.07 at 17–65 (2nd ed. 1985) (hereinafter cited as *Moore* ). Inasmuch as the right to protest and sue is purely the creature of statute, the requirements of section 1514(c) are part of the applicable substantive law, and thus, section 1514(c) specifies who is a real party in interest.[11] Note, as well, that unlike the ordinary real party in interest, plaintiff here is not to be the direct recipient of any funds ordered paid. *See infra* note 14. Furthermore, the possibility of obtaining a benefit as a result of litigation does not make one a real party in interest. *Armour Pharmaceutical Co. v. Home Insurance Co.,* 60 F.R.D. 592 (N.D.Ill.1973) (Excess insurance carrier was not real party in interest.).

Second, both *Wedemann* and *Pasco* are factually distinguishable from the instant case. *Wedemann* involved a suit by a sell-

---

10. The Anti-Assignment Act was not addressed to any great degree by the parties here, and the limitations of § 1514(c) make it unnecessary to decide the direct relevance of the Anti-Assignment Act to the facts at hand.

11. *Moore, supra,* ¶ 17.14 at 17–168, indicates that Fed.R.Civ.P. 17(a), mandating suit by the real party in interest, recognizes vesting of the substantive right to sue in a person statutorily authorized to sue.

er's broker which processed entries and paid duties through another broker. Although the majority opinion constructs an unusual agency relationship to fit the peculiarities of an earlier version of section 1514,[12] both the majority and concurring opinions voice concern that the entity overseeing the customs entry process should not be precluded from suit due to the technical error of not having its agent sign the protest. Note that in *Wedemann* the actual seller under the "duty paid" contracts, that is, the one who would ultimately benefit from a judgment for plaintiff, is not even a party to the suit. *Wedemann* is very much concerned with defects in what is viewed by the court as "procedure" and there is no doubt that the court was convinced that Wedemann was substantially and directly involved in the import transaction. The court also notes that the person who was clearly entitled to sue under the statute had "ratified" the action and that there was no chance of double liability.[13] In fact, the court states that any refund would go to the second broker who actually *paid* Customs and not to plaintiff. Presumably, the broker, who was hired by Wedemann to pay Customs, would pass along any refund to Wedemann. There is no such clear relationship between the party who paid Customs and plaintiff here.[14] *Pasco* is similarly inapplicable. The *Pasco* court notes that Pasco paid the duties. Pasco did so either directly or through reimbursement in accordance with a direct contractual obligation to pay duties. The court virtually ignored the fact that Pasco was not, in an ordinary sense, an "agent of the person paying" as the then existing statute seemed to require, but rather focused on Pasco's relationship to the import transaction.

The statutory amendment enacted after the *Wedemann* and *Pasco* decisions, which eliminated the incongruity of a statute which seemingly allowed an agent, but not the principal, to protest, did not broaden section 1514 to allow any person affected by a duty obligation to protest. *See* S.Rep. No. 249, 96th Cong., 1st Sess. 254, *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 640. As amended, section 1514 allows importers, consignees, sureties, persons paying charges or exactions, or the agents of these persons to protest, and ultimately, to sue. If Congress wanted anyone with a possible financial interest in the outcome of the dispute to be able to protest and sue, it would have been easy enough to so provide, or it could have allowed judicially developed tests of real party in interest or standing to govern. As defendant has argued, the fact that the statute lists specific parties as eligible to bring suit and is silent with regard to other potential plaintiffs implies exclusion. This principle of statutory construction, *expressio unius est exclusio alterius*, is applicable here. *See National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 457–58, 94 S.Ct. 690, 692–93, 38 L.Ed.2d 646 *reh'g denied*, 415 U.S. 952, 94 S.Ct. 1478, 39 L.Ed.2d 568 (1974). The court does not find the legislative history of the amendment to demonstrate an intent which is contrary to the language of the statute. Congress clearly intended to eliminate a situation where an agent, but not its principal, could sue. The legislative history implies nothing more. Furthermore, *Wedemann* and *Pasco* stand

---

**12.** The pre–1970 version of 19 U.S.C. § 1514 allowed "the importer, consignee, or agent of the person paying such charge or exaction" to protest, seemingly indicating in the last case that the agent, but not the principal, may sue. The final "of" may have been a drafting error. *See Wedemann*, 62 CCPA at 93, 515 F.2d at 1150 (Miller, J., concurring).

**13.** Presumably it is because of the unusual agency relationship found in *Wedemann* that the court found ratification applicable. That is, the party which ratified Wedemann's act was held,

in essence, to be a principal of Wedemann. *See also Baylis Brothers Co. v. United States*, 75 Cust.Ct. 89, 400 F.Supp. 940 (1975). The majority opinion made no mention of Fed.R.Civ.P. 17(a) principles, although it is possible that it had such in mind.

**14.** Under 19 C.F.R. § 34.36 (1985) any refund paid in this case would go to Imperial, as importer of record. Imperial is not under the control of plaintiff and is not its agent or principal.

for the principle that section 1514 should be liberally construed to avoid denying a party a day in court on a mere technicality where the essential intent of Congress is met. They do not stand for the principle that the categories set forth in section 1514 are meaningless. Plaintiff here has more than a technical problem. It paid damages calculated with regard to the section 22 fee, it did not pay the section 22 fee, and it may not protest or bring suit challenging the imposition of the fee.

### CIT Rule 17(a)

In view of its conclusion that plaintiff is not a real party in interest under the statute, the court asked the parties whether CIT Rule 17(a) is applicable to this case.[15] Plaintiff argues that it is, and requests time to seek ratification by Imperial, a statutory real party in interest. Defendant asserts, in essence, that allowing ratification would contravene the purpose of the applicable statutes.

CIT Rule 17(a) is not merely a local rule of this court.[16] It mirrors Fed.R.Civ.P. 17(a), which has both Supreme Court and Congressional approval. Furthermore, the rule codifies longstanding equity practice. *Moore, supra,* ¶ 17.08 at 17–81. Nonetheless, Rule 17(a) may not be used to defeat Congressional intent as manifested in applicable statutes, but should be used to prevent forfeiture and injustice where the determination as to who may sue is difficult. *See* Notes of the Advisory Committee on 1966 amendment to Fed.R.Civ.P. 17 and *Moore, supra,* ¶ 17.14 at 17–168 to 17–169 and ¶ 17.15–1 at 17–182. Therefore, the issue is whether ratification here under

Rule 17(a) is in accord with Congressional intent. This requires an examination of both the purpose and intent of Rule 17(a) and the relevant statutory provisions, specifically, 19 U.S.C. § 1514, 28 U.S.C. § 2631(a), and 28 U.S.C. § 2636(a), as applied in this case.

Initially, the court notes that 19 U.S.C. § 1514 (1982 & Supp. II 1984) has been satisfied. Imperial has protested along with plaintiff. Thus, Customs was not put in the position of processing an invalid protest. 28 U.S.C. § 2631(a) (1982) provides, however, that only persons who protest under section 1514, or their sureties, may bring this type of suit. Presumably, the purpose is to limit suit to those who exhaust their administrative remedies. Obviously, plaintiff is not such a person because, as indicated previously, it had no remedies to exhaust. Nonetheless, the statute would be met if Imperial, which exhausted its remedies, did join in the action.

This does not end the inquiry, however, because Imperial's rights have been curtailed by 28 U.S.C. § 2636(a) (1982), the applicable statute of limitations, which has run. Nevertheless, courts have recognized that even where the United States is defendant, substitution of the real party in interest will relate back to the time of filing of the original complaint so as to prevent a bar by the intervening statute of limitations. *See Cummings v. United States,* 704 F.2d 437 (9th Cir.1983) (insurer substituted for insured in suit under the Federal Tort Claims Act); *Wadsworth v. United States,* 511 F.2d 64 (7th Cir.1975)

---

15. CIT Rule 17(a) reads as follows:

(a) **Real Party in Interest.** Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed

on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

16. CIT Rule 17(a) has been utilized, although sparingly. *See, e.g., Zenith Radio Corp. v. United States,* 5 CIT 155 and 178 (1983).

(same). This is so, even if the statute of limitations is jurisdictional. *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508 (6th Cir.1974). In each of these cases the statute of limitations policy of barring stale claims was not offended because plaintiff brought suit in a timely manner.[17] Note, however, that in these three cases, it was clear that the original plaintiff, at least at one time, possessed a claim against the United States. The original plaintiff merely lost its right to pursue the claim when its insurer paid the claim. *See also Scanwell Laboratories, Inc. v. Thomas*, 521 F.2d 941 (2nd Cir.1975), *cert. denied*, 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976) (continuation of suit by original plaintiff/owner allowed after improper assignment rescinded and claim reverted to original owner). Thus, in these cases, notice within the limitations period of a potentially valid action was somewhat better than it would have been if a stranger to the cause of action had sued. In this case, plaintiff is essentially a stranger to the cause of action.

"The meaning and object of the real party in interest principle embodied in Rule 17 is that the action must be brought by a person who possesses the right to enforce the claim and who has a significant interest in the litigation." *Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78, 83 (4th Cir.1973), *cert. denied*, 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974). Furthermore, as the Advisory Committee on the Federal Rules of Civil Procedure stated with regard to the 1966 amendments to Rule 17(a):

The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, substitution,

etc., is added simply in the interests of justice. In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to allow an assignee to sue in his own name. That having been accomplished, the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.

In this case, Imperial had the statutory and regulatory right to bring suit and to obtain any refund ordered, but it has refused to sue in its own name in a timely manner and to date, it has refused to join in this action. Imperial is certainly not in the position of an assignee of a claim or a statutory representative with vital interests in the litigation. Adding Imperial to this action would be adding an uninterested party to the suit. In addition, there was no confusion here as to whether Imperial could sue. Imperial always had that option and it would not exercise it. Its failure to sue was not the result of inadvertence. Compare the case at hand to *Levinson v. Deupree*, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953), where an administrator of a decedent's estate was allowed to continue suit although he was not validly appointed under Admiralty procedure until after the statute of limitations had run. Essentially, the *Levinson* court did not allow a technicality to work an injustice, but instead permitted a party concerned with the litigation, and fully authorized by law to pursue it, to proceed with suit.

The court is also mindful of one additional phrase in Rule 17(a). Under Rule 17(a), the court need only allow a reasonable time

---

**17.** As stated in *Executive Jet*, 507 F.2d at 515 (quoting *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)):

Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have

been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

after objection for ratification or joinder.[18] Defendant's motion was made some months ago, although the basis for the motion was not phrased in the exact terms of a real party in interest objection. For that reason, plaintiff might argue that it was only notified of this problem when it was raised by the court a few weeks ago. Sufficient time has elapsed, however, for plaintiff and Imperial to have rectified any mere inadvertence or technicality. It is clear that the problems plaintiff seeks to correct are not due to simple mistakes, and thus, are not those intended to be remedied by Rule 17(a).

In view of all of the factors mentioned above, the court does not believe that waiting for plaintiff to bargain for the participation of Imperial will serve the purposes of Rule 17(a) or of the relevant statutes. Defendant's motion to dismiss is granted.

---

**18.** Apparently, joinder or substitution is more common than ratification. *Moore, supra,* ¶ 17.-   15–1 at 17–184.