330 F.2d 572
 Philip L. RUSSO, Trustee in Bankruptcy, Appellant,
v.
Elizabeth W. LEARY, Appellee. In the matter of Rossie Moye MANNING, individually and formerly t/a R. M. Manning, Contractor, Bankrupt.
 No. 9251.
 United States Court of Appeals Fourth Circuit.
 Argued January 24, 1964.
 Decided April 13, 1964.
 
 Paul M. Lipkin, Norfolk, Va., for appellant.
 Fred E. Martin, Jr., Norfolk, Va. (Fred E. Martin & Son, Norfolk, Va., on the brief) for appellee.
 Before BRYAN and BELL, Circuit Judges, and MICHIE, District Judge.
 MICHIE, District Judge:
 In the summer of 1961 Christopher C. Christopoulos and Constantine G. Thomas owned certain lots in Princess Anne County, Virginia, among which were those known as Lots 5, 7, 8 and 9 of the Christopoulos and Thomas property. Christopoulos and Thomas contracted to sell these lots to Byler & Womble Realty, Incorporated. Byler & Womble Realty, Incorporated in turn contracted to sell these lots to Rossie Moye Manning, a general contractor, under date of August 15, 1961.
 Neither of these contracts was recorded. The contract between Byler & Womble and Manning could not be recorded as it was not acknowledged. (The contract between Christopoulos and Thomas and Byler & Womble does not appear in the record but, presumably, it was not acknowledged either.)
 On September 21, 1961 Manning entered into an arrangement with the appellee, Mrs. Elizabeth W. Leary. The agreement recites that Manning had agreed to buy lots 5, 8 and 9 of the Christopoulos and Thomas subdivision and wished to erect a house on each of the lots but was without sufficient funds to do so and that Mrs. Leary had advanced some of the funds required and was willing to advance further sums. It then provided that Mrs. Leary would advance $2,000 on each of the proposed houses at certain stages of construction and that Manning would pay her $2,500 when each such house was sold or one year after the date of the agreement whichever was sooner. At the same time, though it is not mentioned in the agreement between Mrs. Leary and Manning, Manning assigned to Mrs. Leary his interest under the contract to purchase the lots in question from Byler & Womble Realty, Incorporated. Though not so stated in the assignment or elsewhere in the papers, as far as can be ascertained, this assignment was obviously deemed to be for additional security for Mrs. Leary's advancements to Manning. This assignment was acknowledged but it was not recorded. And even if it had been recorded it would have been ineffective to indicate the passage of any interest from Christopoulos and Thomas since the contract of sale from Christopoulos and Thomas to Manning was not acknowledged and therefore could not be recorded.
 Manning filed his voluntary petition of bankruptcy in August, 1962 after having completed and sold the home on lot 9. At the time of bankruptcy there was due him from this sale $1459.56 which was turned over to his Trustee in Bankruptcy by the attorney who settled the purchase of the lot.
 The homes on lots 5 and 8 were completed after the bankruptcy by the Trustee in Bankruptcy and the Trustee holds the net funds derived therefrom.
 The Referee in Bankruptcy concluded that Mrs. Leary had a valid lien in the sum of $2,500 each on the bankrupt's interest in the two lots that had not been sold prior to bankruptcy and a valid lien for $1459.56 on the proceeds of the third lot which had been sold prior to bankruptcy. The district court affirmed the Referee and the Trustee in Bankruptcy has appealed from the decision of the district court.
 We think it sufficient to uphold the district court's position to note that the recording acts could have no possible bearing on this situation. The legal title at all times pertinent to the question continued to stand in the names of Christopoulos and Thomas. A judgment against Christopoulos and Thomas therefore, the subsequent documents not being recorded, clearly would have had priority over any of the other parties. But Christopoulos and Thomas are not involved in this controversy. The controversy is entirely between two parties neither of whom held record title to the real estate though each had certain equitable interests therein. As between the two there is no question but what Mrs. Leary's interest is superior to that of Manning and consequently to Manning's creditors. Mrs. Leary had advanced certain sums to Manning to build houses on these lots. Manning had assigned his interest under the contract with Byler & Womble as security for the repayment of these sums and had used the money to build the houses but had not been able to repay Mrs. Leary. Obviously the assignment that Mrs. Leary held was superior to the rights of general creditors since the recordation statutes are inapplicable.
 The court below, in reaching the same conclusion that we have reached, quoted from Mr. Justice Prentis in Sale v. Swann, 138 Va. 198, 120 S.E. 870, 873 (1924) as follows:
 
 
 1
 "A recurrence to some primary equitable principles may be helpful.
 
 
 2
 "When such a contract is concluded, although it is wholly executory in form, it clothes the purchaser with an equitable estate in the land and the vendor with an equitable ownership of the purchase money. This because equity treats that as done which ought to be done by the terms of such a contract, and as the land ought to be conveyed to the vendee and the purchase money transferred to the vendor, equity regards these as done, and treats the vendee as having acquired property in the land, and the vendor as having acquired property in the price. It follows that as the vendee has thus acquired the full equitable estate, he may convey or incumber it, devise it; if he dies intestate it descends to his heirs at law; his wife is entitled to dower in it, and specific performance may be enforced against his heirs at law after his death. In fact, all the incidents of a real ownership belong to it."
 
 
 3
 The contract of sale between Christopoulos and Thomas as sellers and Byler & Womble Realty, Incorporated as purchaser created an equitable interest in Byler & Womble. This interest in turn was sold to Manning who assigned it to Mrs. Leary as security for her advances. Of course, the record title being still in Christopoulos and Thomas, a judgment against them would have bound the property and taken precedence over any of the claims of the subsequent purchasers. But since no deed to Byler & Womble Realty, Incorporated was ever recorded a recordation of any of the subsequent contracts would have been meaningless. It follows therefore that the equitable interest created in Byler & Womble Realty by the contract from Christopoulos and Thomas has passed to Mrs. Leary and only a judgment against Christopoulos and Thomas or some other type of lien created by them could have affected any of these subsequent equitable interests.
 
 
 4
 The appellant relies upon § 70, sub. c of the Bankruptcy Act 11 U.S.C. § 110, sub. c which provides in part:
 
 
 5
 "* * * The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."
 
 
 6
 But the difficulty with this argument is that at the time of the bankruptcy no creditor of Manning could have obtained a lien by legal or equitable proceedings which would have been superior to the rights of Mrs. Leary.
 
 
 7
 Recording the assignment from Manning to Mrs. Leary would indeed have been completely futile since record title was never in Manning. Consequently, no one examining the record title would have had any indication that Manning had any interest in it and since there would be no indication of any interest in Manning the recordation of the deed from Manning to Mrs. Leary would have meant nothing. Anyone examining the title would have assumed that it was still in Christopoulos and Thomas since there was nothing to show that Manning had ever acquired any interest in the property.
 
 
 8
 The rights of creditors of Christopoulos and Thomas, would, of course, have been superior to the right of any of the subsequent parties. But since none of the subsequent parties ever held a recorded interest in the land, their creditors are not affected by the recording acts and equitable considerations can be given full play.
 
 
 9
 The judgment of the district court is affirmed.
 
 
 10
 Affirmed.