**In re UNGER & ASSOCIATES, INC., Debtor.**

**Marla Reynolds, Plan Trustee for the Estate of Unger & Assoc., Inc., Plaintiff,**

**v.**

**Steven Feldman, Melvin I. Feldman, Harvey Shredrick, David Kalicka, John Sullivan, Barry Schulman, Alan Goodman, Bruce F. Hambro, Stanley Winer, Myron D. Rowland and W. Robert Lawhorn, Defendants.**

**Steven Feldman, Melvin I. Feldman, Harvey Shredrick, David Kalicka, John Sullivan, Barry Schulman, Alan Goodman, Bruce F. Hambro, Stanley Winer, Third–Party Plaintiffs,**

**v.**

**Ronald E. Unger, Arlene M. Unger, Dennis Unger, Donald J. Hess and Cargill Financial Services Company XXX, Defendants.**

**Bankruptcy No. 99–41872–S.
Adversary No. 01–4060.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

March 17, 2003.

Paul Keiffer, Hance, Scarborough, Wright, Ginsberg & Brusilow, Dallas, TX, for Plan Trustee.

Vernon Teofan, Jenkens & Gilchrist, P.C., Dallas, TX, for Defendants.

## *OPINION*

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is the Defendants' Motion To Dismiss Amended Complaint and Answer And First Amended Third–Party Complaint Subject Thereto ("Motion I") filed by Defendants Steven Feldman, Melvin I. Feldman, Harvey Shredrick, David Kalicka, John Sullivan, Barry Schulman, Alan Goodman, Bruce F. Hambro, Stanley Winer (the "Longmeadow Group") and the Motion by Defendants Myron D. Rowland and W. Robert Lawhorn To Dismiss Complaint ("Motion II"). The Court considered the entire record, including the argument of counsel at a scheduled hearing, in connection with these Motions. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed. R.Bankr.Proc. 7052 and disposes of all issues in connection with the Motion to Dismiss currently before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Stated briefly, this is a Complaint brought by Marla Reynolds the Plan Trustee under the confirmed Plan in this

bankruptcy case. The Complaint seeks to avoid certain transfers and recover sums paid to eleven individuals who were alleged to be investors in Unger & Associates Inc. and received certain payments prior to the filing of bankruptcy which are subject to the avoidance actions provided in the Bankruptcy Code. Nine of those individuals have filed a Third Party Complaint against the principals of the company, and the primary lender who financed the operations of the company. The Third Party Complaint seeks contribution and/or indemnity from the principals of the company and the principal lender based on several theories including civil conspiracy, breach of fiduciary duty and the furnishing of incorrect information to the investors by the principals of the company. The Third Party Complaint is filed subject to the instant Motion to Dismiss. In order to better understand the scenario in which this action is presented to the Court a detailed recitation of the events leading up to the instant controversy as gleaned from the allegations of the Complaint and other pleadings in this action is necessary.

In April of 1990, Unger & Associates, Inc., (the "Debtor") won four contracts to collect defaulted student loans on behalf of the Department of Education (the "DOE"). In August of 1990, certain of the Defendants, referred to as "the Longmeadow Group", purchased a cumulative 20% interest in the Debtor for the cumulative sum of $500,000. Ron Unger, Arlene Unger and Dennis Unger (the "Ungers") were the initial principals of the Debtor. Mssrs. Rowland and Lawhorn also invested $750,000 into the business venture for a 50% interest in one of the four contracts. In connection with the latter transaction, regarding the one "East Coast" contract, a new business entity, NIC was formed. Ultimately, the aforementioned interests were transferred to the Debtor. The DOE awarded two additional contracts to the Debtor.

Several financial transactions occurred subsequently among the entities in attempts to fund unprofitable endeavors. The details are enumerated in the Complaint initiating these adversary proceedings ("the Complaint"). Pursuant to the Complaint, and for purposes of the instant matter only, suffice it to say that by July, 1996, the Debtor was operating at a loss from which it never recovered. The Debtor continued operations on existing accounts through 1998 and even obtained new contracts. To service the new contracts, the Debtor sought additional loans from Cargill Financial Services Company XXX ("Cargill"). Cargill requested stock in the Debtor to secure the approximately $2.2 million loan. The Longmeadow Group were the holders of certain Class "B" common stock of the Debtor. Under its 1990 agreement with the Longmeadow Group, on November 25, 1997, the Debtor exercised its option to call the stock of the Longmeadow Group effective in December, 1997. According to a pre-set formula, the price was $1,414,350.

The Complaint alleges that Steven Feldman and Harvey Shredrick were on the Board of Directors during this transaction and that S. Feldman and David Kalicka served as attorneys in fact for the members of the Longmeadow Group in this transaction. Also in connection with the Cargill funding transaction, the Complaint alleges Rowland and Lawhorn, referred to as "the GRC Group", were paid $1,850,000 to release their lien against stock in the Debtor. Further, the Complaint alleges Rowland received $1,110,000, Lawhorn received $740,000, S. Feldman, Goodman and Schulman each received $282,869.70, M. Feldman, Hambro, Winer and Sullivan each received $70,717.42 and Shredrick and Kalicka each received $141,434.85 in

connection with the Cargill financing of the Debtor.

Allegedly, the Debtor continued to operate at a loss of some $200,000 to $300,000 a month until it filed its petition on June 11, 1999. 11 U.S.C. § 546(a)(1)(A) limits the filing of actions under sections 544, 545, 547, 548 or 553 to "two years after the entry of the order for relief ...". *11 U.S.C. § 546(a)(1)(A)*. The Complaint requests that the Court employ 11 U.S.C. § 544(b) of the Bankruptcy Code to avoid the payments made to the Longmeadow Group for the repurchase of their Class "B" shares of stock that had been called in by the Debtor and to avoid the payments to the GRC Group.

After the Debtor filed its petition for relief under the Bankruptcy Code on June 11, 1999, William Eschrich was appointed Chapter 11 Trustee. On May 29, 2001 this Court entered its Order Confirming the Jointly Proposed First Amended Plan of Liquidation For Unger & Assoc., Inc., And Findings of Fact And Conclusions of Law In Support Thereof confirming the Plan, as Modified (the "Plan Order"). Central to the Confirmed Plan is the creation of a Liquidating Trust and the appointment of a Liquidating Trustee. The Plan, at Article 9.1, specifically identifies Marla Reynolds, the Plaintiff in this Adversary Proceeding, as Liquidating Trustee under the confirmed Plan ("Reynolds"). The Effective Date of the Plan, as defined by the confirmed Plan, is "the thirtieth (30) business day after the Confirmation Order becomes a Final Order." [1] *Jointly Proposed First Amended Plan Article 1–1.01.28*. Articles 2.01 and 6.01 of the confirmed Plan specifically contemplate that the Liquidating or Plan Trustee shall "prosecute claims and causes of action previously owned by the Debtor or Estate ...". *Jointly Proposed First Amended Plan Article 2.01,*

6.01. The Plan is binding upon all parties and the order confirming the plan is res judicata.

On June 6, 2001, Special Counsel for the Plan Trustee, filed the Complaint on behalf of Marla Reynolds, Plan Trustee, initiating this adversary proceeding under 11 U.S.C. § 544(b). On December 7, 2001, an Amended Complaint was filed on behalf of Marla Reynolds, as Plan Trustee; the Amended Complaint further identifies Reynolds as "successor in interest to William Eschrich, Chapter 11 Trustee" and adds a count under the Texas Business Corporation Act. In the interim period between June 6, 2001 and December 7, 2001, the time within which the Longmeadow Defendants might file their answers was extended eight times by agreement with Marla Reynolds in her capacity as Liquidating Trustee. Each order recites that the Defendants do not waive their rights to assert any defenses, including Rule 12 defenses, by agreeing to the entry of the order. Lawhorn and Rowland, however, filed their Answer on July 20, 2001. The first three motions requesting the extension of time within which to respond did not elucidate the Court as to the basis for the request. The fourth through eighth motions seeking extensions advise the Court that the parties are engaged in settlement discussions with the Plan Trustee. A few days following the filing of the Amended Complaint, the Longmeadow Group filed its Motion To Dismiss and Answer And Third Party Complaint (as thereafter amended) ("Motion To Dismiss" or "Motion I") together with a Demand for Jury Trial, a Motion to Withdraw the Reference and a motion for stay pending resolution of the motion to withdraw the reference. The Bankruptcy Court granted the motion for stay. Following its review of

---

**1.** The *Defendants* incorrectly calculate such date to be June 29, 2001.

the pleadings, the District Court found that the Motion To Withdraw the reference should be referred to the U.S. Bankruptcy Court for an evidentiary hearing and recommended disposition, if necessary. Following on the heels of the District Court's Order, Donald J. Hess filed his Motion To Dismiss the Third Party Complaint and Answer ("Hess' Motion"). The Longmeadow Group's Motion To Dismiss was adopted by Rowland and Lawhorn ("Motion II"). The Court set the Motion I, Hess' Motion and Motion II for hearing together. At the hearing, Hess' Motion was passed pending the Court's determination of the Motion I and Motion II. Following a full hearing on the merits, the issues raised by the Defendants' respective Motions to Dismiss were taken under advisement. Subsequently, Defendants filed an Affidavit of William Eschrich, Chapter 11 Trustee as supplemental evidence to which Reynolds responded in opposition.

The two Motions to Dismiss [2] (as amended on January 4, 2002 for purposes of answering the First Amended Third Party Complaint and making a demand for a jury trial) challenge Reynolds' standing to file the adversary complaint and to prosecute the avoidance action. Particularly, Defendants Rowland, Lawhorn and the Longmeadow Group (henceforth referred to jointly as "Defendants") aver (1) "the Plan Trust did not own the claims and causes of action asserted in the Complaint and therefore the Plan Trustee had no standing or authority to file the Complaint on the date it was filed [3] and [ (2) ] on the date the Plan Trust became vested with such claims and causes of action, any ac-

tion thereon was barred by the two year limitations period of 11 U.S.C. § 546(a)." Specifically, as Defendants argued at the trial and in their *Response to Case Law Supplement* filed May 2, 2002, Reynolds was not the real party in interest required by Bankruptcy Rule 7017 applying Rule 17 F.R.Civ.P. 17. Notwithstanding that the objecting Defendants admit that the Plan designated Marla Reynolds as Plan Trustee [*Defendants' Motion To Dismiss, P.3, Para. 2(b)(ii)*], Defendants assert that William Eschrich, the appointed Chapter 11 Trustee, was the proper party to file such cause of action under the Federal and Bankruptcy Rules of Procedure and that, as such, he elected not to file the lawsuit, although he had authority to do so pursuant to this Court's order.

**Real Party in Interest and Standing**

 Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue and with the real party in interest principle. *6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure* § 1542 (1990). [ . . . ] According to Wright, Miller and Kane, "the real party in interest principle is a means to identify the person who possesses the right sought to be enforced. . . . ." *Id.* Parties cannot waive an objection to standing which even the appellate Courts may raise *sua sponte*. *Lang v. French*, 154 F.3d 217 (5th Cir. 1998). The standing doctrine, unlike Rule 17, relates only to the public law context. Rule 17 is implicated in suits between private parties. *See Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1147 (6th Cir.

---

2. The Defendant's Motion To Dismiss was combined with its Answer containing additional defenses and Affirmative Defenses not addressed at the hearing on the Motions To Dismiss. The hearing was confined to the standing issue and whether Reynolds was the proper party-in-interest.

3. Although the Motion to Dismiss states that it is filed "Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ..." it is obvious that Rule 17 is the basis for the Motion.

1975)["The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Since standing refers to identifying the proper litigant in a suit, it is related but not identical to the concept of the real party in interest. The former doctrine usually applies to "public" suits and the latter to "private" ones.] *Lucas v. Lucas,* 946 F.2d 1318, 1322 n. 6 (8th Cir.1991) (" 'Standing' is a constitutional doctrine regarding one's right to challenge a governmental action"), *Federal Deposit Ins. Corp. v. Bachman,* 894 F.2d 1233, 1236 (10th Cir.1990) ("Using the term 'standing' to designate real-party-in-interest issues tempts courts to apply standing principles outside the context in which they were developed."). *See, also, South African Marine Corp., Ltd. v. U.S.,* 10 C.I.T. 415, 417, 640 F.Supp. 247, 250 (1986) ("Closely related and often confused with standing are the concepts of 'capacity' and 'real party in interest.' ") [*citing to 6 Wright and Miller, Federal Practice and Procedure Civil § 1542 at 639 (1971)*]. The Court is of the opinion that standing is not an appropriate objection in this particular action given no governmental action. Therefore, the objection to standing must be denied.

Rule 17, entitled, "Real Party in Interest" sets forth:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

*FRCP Rule 17.*

 The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery. *Farrell Construction Company v. Jefferson Parish, Louisiana,* 896 F.2d 136, 139–140 (5th Cir.1990) citing to *United States v. 936.71 Acres of Land,* 418 F.2d 551, 556 (5th Cir.1969) and *Lubbock Feed Lots, Inc. v. Iowa Beef Processors,* 630 F.2d 250, 256–57 (5th Cir.1980). The purpose of [Rule 17] is to prevent multiple or conflicting lawsuits by persons such as assignees, executors, or third-party beneficiaries, who would not be bound by *res judicata* principles. *Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100, 102 (5th Cir.1989) citing to *C. Wright & A. Miller, Federal Practice & Procedure* § 1541, at 635 (1971). .... *See, also, Resnick, Sommer and King, Collier on Bankruptcy,* § 7017.02, 7017–2 through 4 (15th Ed.2002). [*See, also, Wieberg [Wieburg] v. GTE Southwest, Inc.,* 272 F.3db 302 (5th Cir.2001).] While the rule adopted this policy, it also anticipated that real party in interest disputes should arise rarely and ought to be easily resolved. Such disputes are likely to be evident to a defendant at the onset of suit, because he almost always knows whether he has been sued by the party who "owns" the claim. *Gogolin &*

*Stelter v. Karn's Auto Imports, Inc.*, 886 F.2d 100, 102. The "real party in interest" defense is waived when it is not timely asserted. The objection must be raised when joinder is "practical and convenient". *Id.* at 102. "The earlier the defense is raised, the more likely that the high cost of trial preparation for both parties can be avoided if a real party in interest question is determined adversely to a plaintiff." *Id.* Thus, the goal of judicial efficiency is furthered. *Rogers v. Samedan Oil Corp.* 308 F.3d 477, 483–484 (5th Cir.2002). See, also, *United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d 563 (8th Cir. 1996) (failure to raise the assertion that plaintiff was not the real party in interest until pretrial conference constituted a waiver); *Hefley v. Jones*, 687 F.2d 1383, 1388 (10th Cir.1982) (failure to raise the assertion that plaintiff was not the real party until 16 days prior to trial constituted a waiver); *Chicago & Northwestern Transp. Co. v. Negus–Sweenie, Inc.*, 549 F.2d 47, 50 (8th Cir.1977); *McLouth Steel Corp. v. Mesta Machine Co.*, 116 F.Supp. 689, 691 (D.Pa.1953), affirmed on other grounds, 214 F.2d 608 (3rd Cir.1954), cert. denied, 348 U.S. 873, 75 S.Ct. 109, 99 L.Ed. 687 (1954)(failure to raise the assertion that the plaintiff was not the real party until four days prior to trial constituted a waiver).

■ The Court has carefully considered Rule 17, its purposes, the possibility of prejudice to either party and the activities of the opposing parties in this proceeding from its inception on June 6, 2001 through Defendants' objection under Rule 17 which was raised for the first time in the *Response* filed on May 2, 2002. Given the Fifth Circuit's clear position on the real party in interest defense, the unusual numbers of extensions the objecting parties were willing to negotiate with Marla Reynolds as the Plan Trustee and the time which elapsed in the interim, this Court finds that the Defendants waived their right to object under Rule 17 notwithstanding their reservation of rights in the numerous agreed orders. In persisting in reserving the right, the Defendants were, as the Hon. Edith Jones aptly described such a strategy: "lay[ing] behind the log". *Gogolin & Stelter v. Karn's Auto Imports, Inc.*, 886 F.2d 100, 102 (5th Cir.1989). Equity and judicial estoppel prevent the objecting Defendants from negotiating procedural issues (the extensions) and substantive issues (settlement negotiations) with Reynolds, acknowledging her authority to do so as Plan Trustee and her authority to do so *in this adversary*, then asserting a Rule 17 objection as a defense a year into the proceeding. It is clear to this Court based upon the language of the numerous agreed motions and agreed orders that the objecting Defendants contemplated their objection to Reynolds' authority to prosecute the action but secreted it as a trump to be laid upon the table if settlement negotiations failed.

■ This Court does not treat deadlines lightly. It firmly believes in the principles expounded in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280, 26 C.B.C.2d 487 (1992). Assume, *arguendo*, that Reynolds was not a "real party in interest" as contemplated under Rule 17 until the Effective Date of the Plan, until the thirtieth business day following the order entered on May 30, 2001 becoming final (July 23, 2001). If so, Reynolds' act of filing the Complaint initiating the suit would be an invalid act. Is it possible to validate an invalid act? Defendants argue that ratification by the Plan Trustee via filing the Amended Complaint cannot cure the real party in interest defect because there was no "honest and understandable mistake". For this

proposition, the Defendants attempt to distinguish the facts in this case from those in *Wieburg v. GTE Southwest, Inc.,* 272 F.3d 302 (5th Cir.2001). This Court disagrees with Defendants' conclusion and finds there was indeed an honest and understandable mistake as contemplated by the Fifth Circuit Court in *Wieburg v. GTE Southwest, Inc.,* 272 F.3d 302, 308 (5th Cir.2001). The Order confirming the Plan recites that the Liquidating Trustee, by signing the Trust Agreement (placed into the Court's record as evidence at the confirmation hearing) "shall be assuming the duties of a Chapter 7 trustee pursuant to section 704 of the Bankruptcy Code ...". Further, in the Conclusions of Law at paragraphs "E" and "H", the Order authorizes the Liquidating Trustee to take the necessary steps to implement the Plan "hereby". The Court finds that Reynolds reasonably believed she was empowered by this Court to initiate the lawsuit and that to have failed to do so would have placed her in breach of her duties. Moreover, the Court finds that by filing the suit and becoming qualified as soon as it was reasonably possible to do so Reynolds cured any defect in initiating the proceeding June 6, 2001. Any defect in her capacity is cured by her actions, both through becoming the proper party and through filing the appropriate pleadings, here, the Amended Complaint, once Reynolds became qualified under the Plan and Order. Moreover, once the Plan was accepted by the creditors and approved by the Court, Reynolds, who was named in the Plan as the Plan Trustee, became an indispensable party under Federal Rule 19 made applicable here pursuant to Fed.R.Bankr.P. 7019. The *res judicata* effect of any orders entered in this matter will bind her.

▆▆▆ This Court is also greatly influenced by the language of Rule 17 which provides in part "no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, a joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." It is clear that the Rule envisions a liberal interpretation to allow the real party in interest to appear and be heard in any action in which this issue has been raised. In the instant case all necessary steps to ratify the action of the Liquidating Trustee had been taken before the issue even arose. The Liquidation Trustee is clearly the successor in interest to the Chapter 11 Trustee and to the extent that there was any lack of capacity on her part at the date of the filing of the suit that lack of capacity was cured upon the effective date of the Plan. Certainly, the short period of time involved does not constitute an unreasonable time for ratification of her actions when there may have been a question about her capacity to proceed.

▆▆▆ Another purpose has been attributed to Rule 17(a) besides preventing duplicate litigation, binding parties and the res judicata effect: prevention of forfeiture. *Wieburg v. GTE Southwest, Inc.,* 272 F.3d 302, 308 (5th Cir.2001); *South African Marine Corp. v. United States,* 640 F.Supp. 247, 253–55 (C.I.T.1986). Therefore, in addition to the foregoing analysis, the Court weighed the relative harm to the adversarial parties and to the creditors of the Estate, the beneficiaries under the Plan and Liquidating Trust. The Defendants have failed to demonstrate to this Court that they have suffered prejudice as a result of Reynolds filing the suit then ratifying her actions. On the contrary, Reynolds and the Bankruptcy Es-

tate negotiated settlement and prosecuted this action in good faith and at some expense. Had Defendants raised their Rule 17 objection *promptly,* i.e. prior to seeking numerous extensions to their answer deadlines, Defendants could have mitigated the expenses to the estate. Furthermore, dismissal of this action based upon a Rule 17(a) objection rather than upon the merits of the case would result in forfeiture of the cause of action to the detriment of the creditors of the bankruptcy estate and beneficiaries of the Liquidating Trust created under the Plan and to the benefit of certain insiders of the Debtor, all of whom are bound by the confirmed Plan which included the underlying cause of action here. "Equity treats that as done which ought to be done". *B. Cardozo, The Nature of the Judicial Process,* 39 *(Yale University Press,* 1921). See, also, *Russo v. Leary,* 330 F.2d 572, 574 (4th Cir.1964). Therefore, the Court denies the objection under Rule 17(a) of the Federal Rules of Civil Procedure made applicable here pursuant to Fed.R.Bankr.P. 7017. Further, the Court finds that the avoidance causes of action held by the Chapter 11 Trustee passed from the Bankruptcy Estate to the Liquidating Trust under the auspices of the Liquidating Trustee pursuant to the terms of the Plan.

The Defendants argued that the filing of the Amended Complaint violates the two year limitations period of 11 U.S.C. § 546(a). The Court concludes that the filing of the amended complaint which ratified the earlier filing relates back to the date of the filing of the original Complaint. *F.Rule Civ.P. 15(c) made applicable here pursuant to Fed.R.Bankr.P. 7015.*

Following the hearing on two motions to dismiss, Defendants filed a pleading entitled Defendants' Submission of Affidavit of William Eschrich, Chapter 11 Trustee, As Supplemental Evidence In Support of the Motion To Dismiss. Reynolds filed an objection. The Court agrees with Reynolds' conclusion that the Eschrich Affidavit is a "sloppy attempt at a collateral attack on the prior orders of this Court" which should be overruled. Also, the Court finds that Defendants had every opportunity to provide testimony from William Eschrich at the trial and simply failed to do so. It defies this Court's credulity that Defendants would purport such readily discoverable material to be newly discovered evidence.[4]

## CONCLUSION

For the foregoing reasons, this Court must deny Defendants' Motion To Dismiss Amended Complaint and Answer And First Amended Third–Party Complaint Subject Thereto, filed by Defendants Steven Feldman, Melvin I. Feldman, Harvey Shredrick, David Kalicka, John Sullivan, Barry Schulman, Alan Goodman, Bruce F. Hambro, Stanley Winer (the "Longmeadow Group") and the Motion by Defendants Myron D. Rowland and W. Robert Lawhorn To Dismiss Complaint. An order will be entered accordingly.

4. Defendants also raised arguments citing to the very unsettled case of *In re Cybergenics Corp.,* 226 F.3d 237, 44 Collier Bankr.Cas.2d 1418, 36 Bankr.Ct.Dec. 190, Bankr.L. Rep. P 78,263 (3rd Cir.2000). At this juncture, rehearing *en Banc* has been granted and the former Opinion has been vacated by *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 310 F.3d 785 (3rd Cir. 2002). The arguments made pursuant to *Cybergenics* are not persuasive.